IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOPELYNN NEELY, ) | |
| Plaintiff ) | |
| ) | |
| v.  ) | Civil Action No. 04-1553 |
| ) | |
| MCDONALD'S CORPORATION and ) | |
| DESI CARTER, ) | |
| ) | |
| Defendants ) | |

**MEMORANDUM ORDER**

CONTI, District Judge.

Pending before the court is a motion for summary judgment (Doc. No. 31) filed by defendant McDonald's Corporation ("McDonald's"). Hopelynn Neely ("Neely" or "plaintiff") filed this civil action against McDonald's and Desi Carter ("Carter") alleging, among other things, hostile work environment and constructive discharge claims against her former employer, McDonald's, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), and the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. ANN. § 951 *et seq.* ("PHRA"). Plaintiff voluntarily dismissed three other claims that she had asserted against McDonald's. Carter did not file or join in this motion for summary judgment and plaintiff asserts four claims against him which are not affected by this memorandum order.[1]

McDonald's moves for summary judgment in its favor with respect to plaintiff's hostile work environment and constructive discharge claims under Title VII and the PHRA, the only

---

[1] Plaintiff's claims against Carter are: 1) sexual harassment claims under Title VII and the PHRA, 2) assault claim under state law, 3) battery claim under state law, and 4) intentional infliction of emotional distress under state law. (Compl. 4-11.)

remaining claims asserted against McDonald's. Summary judgment will be granted in favor of McDonald's on the hostile work environment and constructive discharge claims under both Title VII and the PHRA because the undisputed material facts of record show that plaintiff cannot prove a prima facie case for those claims.

### *Factual Background*

The factual background is derived from the undisputed evidence of record and the disputed evidence of record viewed in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Plaintiff worked for McDonald's in its restaurant located at One Poplar Street, Crafton, Pennsylvania for a period of approximately five months, commencing in August 2003 to January 2004. (Combined Statement of Material Facts ("C.S.") Doc. No. 34 ¶ 1). Plaintiff was employed as a crew worker. Id. Carter was employed as a salaried manager-trainee at the same location from approximately September 2003 through February 2004. Id. ¶ 2. Carter held the position of a manager-trainee. In that position, he did not have the authority to hire or fire Neely or anyone else. Carter did not have the authority to establish the work schedules for employees. Carter did not have the authority to set or change pay rates for McDonald's employees. Carter did not have the authority to promote, demote or otherwise make tangible employment decisions affecting employees. Id. ¶ 3. Plaintiff testified that she believed Desi Carter was her "boss" and that he was the "second person in command" at the restaurant. Id.

In early October 2003, Carter began to harass Neely sexually with constant, inappropriate and unwelcome sexual attentions. Id. ¶ 9. These inappropriate attentions included, but were not

limited to, brushing against and touching Neely's breasts, blowing into Neely's hair, brushing against her in a sexual manner, inappropriately touching and grabbing her buttocks, inappropriately cornering Neely and making unwelcome sexual advances when alone in certain areas of the restaurant, and making sexually explicit and derogatory remarks to Neely on a regular and consistent basis. Id. ¶ 10. In response to Carter's actions, Neely, on or about October 27, 2003, filed her first written complaint with her manager, Chris Bellock ("Bellock"). Id. ¶ 11. The complaint was in the form of a handwritten note which stated:

> Every time I work a shift with Desi he's always standing up ag[a]inst me & some thing is always rubbing ag[a]inst me. When changing the cash in drive threw[sic], he always goes behind me and rubs my but [sic] & not with his hand (even when he comes back to help me). My mother came in one day & had a problem with how close he was to me. He has asked me to E-mail, but why I don't know. I won't!

Doc. No. 42-5, Pl.'s Ex. 4.

After receiving Neely's complaint, Bellock informed her immediate supervisor, Gwen Bruno Menzer ("Menzer"), an operations consultant, about the accusations concerning Carter's conduct. (C.S. ¶ 14). Upon learning of Neely's complaints from Bellock, Menzer contacted McDonald's human resources department. Id. ¶ 15. A representative from the human resources department instructed Menzer to conduct an investigation into plaintiff's complaints. Id. ¶ 16. During the course of her investigation, Menzer interviewed six to eight other employees. Id. ¶ 21. After speaking with the other employees, Menzer learned that none of those employees witnessed any of the conduct alleged by plaintiff. Id. ¶ 21. After the investigation, Carter was given a written warning for violating McDonald's zero tolerance policy (the "Policy") by reason of his unacceptable behavior and language. Id. ¶ 26. This warning read in full:

> On November 12, 2003, it was brought to my attention that you violated the zero tolerance policy set by McDonald's along with unacceptable behavior and language being used with a crew person. This is a violation of McDonald's Zero Tolerance Policy and is resulting in a written warning. A future offense of this policy will result in further disciplinary action up to or including termination. We have reviewed and reiterated these policies on the date of the disciplinary action.

Doc. No. 42-4, Pl.'s Ex. 3 at p.37.

The Policy, which was provided to each employee during orientation and was posted in each restaurant, set forth a course of action for employees who felt they had been harassed or otherwise discriminated against. C.S. ¶ 7. Plaintiff admitted that she understood the Policy and was aware of it. Id. ¶ 8. The Policy provided, in relevant part:

> Every employee has the right, and is encouraged to tell any McDonald's employee in a professional manner to stop behavior toward him/her that the employee believes to be discriminatory, harassing and/or offensive. Any employee who feels subjected to discrimination or harassment should immediately report it to their Human Resources Manager or officer in charge. McDonald's will investigate any report thoroughly, with sensitivity towards confidentiality. If the report has merit, McDonald's will take corrective action, including, but not limited to, disciplinary action against the offender ranging from a warning to termination.

Id.

Menzer also instructed Bellock not to schedule Carter and Neely together on any work shift. Id. ¶ 27. Despite this instruction, the two were scheduled to work a simultaneous shift on November 20, 2003, eight days after Carter's disciplinary action. Id. After this shift, Carter's and plaintiff's schedule began to overlap frequently by a period of approximately one hour. (Doc. No. 42-2, Pl.'s Ex. 1, Pl.'s Dep. at 116). During this time, plaintiff stated that Carter did such things as "look her up and down," and he called her "babe." (Doc. No. 42-6, Pl's Ex. 5). Plaintiff, however, acknowledged in her deposition that Carter's conduct after the initial

4

complaint did not rise to the level of harassment. (Doc. No. 42-2, Pl.'s Ex. 1, Pl.'s Dep. at 119). Plaintiff stated that after Carter started working a shift different from hers, though his shift had a one-hour overlap with plaintiff's shift, she did not remember being harassed by Carter again. Id. at 119-20.  She also testified that when their shifts overlapped, there were no incidents of harassment because she "didn't let it get that far." Id. at 119.

Plaintiff made a second written complaint regarding Carter's conduct. Id. at 83. The exact date on which this written complaint was made is unclear, but viewing plaintiff's deposition and the written complaint in the light most favorable to the plaintiff, the court concludes that the second complaint was written on January 22, 2004. Plaintiff stated in her deposition that she was unsure of the date, but she believed it was made a few weeks after the first complaint in October 2003. Id. Plaintiff also stated in her deposition that she was currently unsure of the dates, but that she dated her complaints when she gave them to McDonald's. Id. at 20. The colloquy relating to the matter was:

"Q. Do you remember the date?

A. No, I don't.  Everything was dated when I turned it in to McDonald's, though."

Id.

The second complaint read as follows:

He is always look me up & down.  I came in Dec. 26 for my check & he was looking me up & down & told me I look good in street close [sic].  I said thanks but put your eyes back in your head.
He is not only doing it to me, I have seen what he does to the other girls.  I'm not giving names thats there [sic] place.  But I'm uncofterable [sic] I can only umagin [sic] how they feel.
On Thuresday [sic] Jan 22 he kept calling me babe I'm no ones babe not even my boyfriends.  Then I was waiting on someone & he was squating down next to me aginst [sic] my leg.  The costumer asked what he was doing.  I didn't know.  I

>slamed [sic] my drour [sic] & moved away. He didn't say anything just looked at me.

Doc. No. 42-6, Pl.'s Ex. 5 (emphasis added).[2]

When all inferences are drawn in the nonmoving party's favor, the reference to January 22 in plaintiff's second complaint must be January 22, 2004 since plaintiff only worked at McDonald's from October 2003 to January 2004. In her affidavit, plaintiff confirms that the date the second complaint was made was on January 22, 2004. (Doc. No. 42-3, Pl.'s Ex. 2, Pl.'s Aff. ¶ 9).[3]

On or about January 27, 2004, plaintiff was informed by Bellock that Bellock did not think McDonald's was going to take any further efforts to prevent the hostile environment from persisting. (Doc. No. 42-2, Pl.'s Ex. 1, Pl.'s Dep. at 85). On that day, plaintiff quit her job, claiming to have lost hope that the situation would get better and asserts in this case that she was constructively discharged. Id. After plaintiff resigned, McDonald's offered her the opportunity to return to her position at the same salary. Id. at 64. She was informed that Carter would not

---

[2]The conduct described in the second complaint is the same conduct described above which plaintiff testified did not involve incidents of harassment because she "didn't let it get that far." Pl.'s Dep. at 119.

[3]Contrary to McDonald's argument, this evidence does not fall within the "sham affidavit doctrine." There was conflicting evidence in plaintiff's deposition that was later clarified by the affidavit. A sham affidavit is "an affidavit that contradicts *clear* testimony previously given by the same witness, usu. used in an attempt to create an issue of fact in response to a motion for summary judgment." BLACK'S LAW DICTIONARY 63 (8th ed. 2004)(emphasis added). In the case *sub judice* plaintiff's deposition testimony was far from clear. Plaintiff stated on several occasions that she was unsure of the exact dates, but that she dated the complaints before handing them over to McDonald's. (Doc. No. 42-2, Pl.'s Ex. 1, Pl.'s Dep. at 20). Plaintiff's affidavit simply clarified prior testimony.

work with her by reason of his having been transferred to another location.  Id.  Plaintiff rejected McDonald's offer.  Id.

### *Standard of Review*

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidvaits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  Id. at 249.  The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment.  Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (citing WRIGHT AND MILLER, FEDERAL PRACTICE § 2721); Pollack v. City of Newark, 147 F. Supp. 35, 39 (D.N.J. 1956). aff'd, 248 F.2d 543 (3d Cir. 1957), cert.denied, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or *otherwise made admissible in evidence"*) (emphasis added).

*Discussion*

McDonald's moves for summary judgment on plaintiff's hostile work environment and constructive discharge claims under Title VII and the PHRA. McDonald's argues that plaintiff failed to adduce sufficient evidence of a prima facie case for a hostile work environment claim or for a constructive discharge claim. The arguments regarding the hostile work environment claim and the constructive discharge claim will be discussed in turn.[4]

**I. Hostile Work Environment**

*A. Elements of the Claim*

The United States Court of Appeals for the Third Circuit has held that to succeed on a hostile work environment claim of sexual discrimination or harassment under Title VII, a plaintiff must demonstrate that (1) she suffered intentional discrimination because of her gender; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in her position; and (5) there is a basis for respondeat superior liability. Kunin v. Sears Roebuck & Co., 175 F.3d 289, 295 (3d. Cir. 1999).

B. *Respondeat Superior Liability*

Here McDonald's is asserting that plaintiff did not adduce evidence of the fifth element upon which a reasonable trier of fact could return a verdict for plaintiff. In determining if respondeat superior liability exists, the court must distinguish between whether it was a supervisor or a co-worker who allegedly caused the hostile work environment. When it is a

---

[4]The standards under the PHRA and Title VII are the same and will therefore be discussed and decided together. See Woodson v. Scott Paper Co., 109 F.3d 913, 919 (3d Cir. 1997) (applying Title VII analysis to PHRA claim).

supervisor creating the hostile work environment, vicarious liability is implicated. Faragher v. City of Boca Raton, 524 U.S. 775, 777 (1998). When it is a co-worker harassing plaintiff, the court, however, is instructed to look to traditional agency principles. Andrews v. Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990) (citing Meritor Savings Bank v. Vinson, 477 U.S. 57, 72 (1986)). "According to these principles, 'liability exists where the defendant knew or should have known of the harassment and failed to take prompt remedial action.'" Andrews, 895 F.2d at 1486 (quoting Steele v Offshore Shipbuilding, Inc., 867 F.2d 1311, 1316 (11th Cir. 1989)). Defendant argues that plaintiff did not adduce sufficient evidence to show either variation of respondeat superior liability.

*1. Supervisor– Vicarious Liability*

Plaintiff contends that Carter was her "supervisor" within the context of Title VII and, therefore, vicarious liability exists. Neither the United States Supreme Court nor the United States Court of Appeals for the Third Circuit has explicitly defined the term "supervisor" as it is used in the context of Title VII. In Jensen v. Potter, 435 F.3d 444 (3d Cir. 2006), the United States Court of Appeals for the Third Circuit noted that the issue presented here regarding who is a supervisor for purposes of Title VII "may be an open question." Id. at 453 n.4. The court of appeals did not need to decide the issue who may be a supervisor, but compared the differing rationales of the Courts of Appeals for the Seventh and Second Circuits. Id. (comparing Parkins v. Civil Constructors of Ill.Inc., 163 F.3d 1027, 1034 (7th Cir. 1998) (functions of a supervisor include authority to "hire, fire, promote, transfer, or discipline an employee"), with Mack v. Otis Elevator Co., 325 F.3d 116, 125 (2d Cir. 2003) (supervisor is one who has authority that "enabled or materially augmented [his or her] ability . . . to create a hostile work environment").

In <u>Parkins</u>, the court of appeals recognized:

> [I]t is manifest that the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment. This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee. <u>Absent an entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes imputing liability to the employer.</u>

<u>Parkins</u>, 163 F.3d at 1034 (emphasis added). The rationale of <u>Parkins</u> has been adopted by the majority of the circuits that have considered the issue presented here. See <u>Noviello v. City of Boston</u>, 398 F.3d 76 (1st Cir. 2005)(agreeing with <u>Parkins</u> rationale); <u>Jones v. John Morrell & Co.</u>, 354 F.3d 938, 940 (8th Cir. 2004) ("The majority [of courts of appeals] hold that, to be a supervisor, the alleged harasser must have had the power (not necessarily exercised) to take tangible employment action against the victim, such as the authority to hire, fire, promote or reassign to significantly different duties.") (citing <u>Hall v. Bodine Elec. Co.</u>, 276 F.3d 345, 355 (7th Cir. 2002); <u>Mikels v. City of Durham</u>, 183 F.3d 323, 333-34 (4th Cir. 1999)); <u>Lissau v. Southern Food Serv., Inc.</u>, 159 F.3d 177, 179 (4th Cir.1998) (where employee had the authority to "hire and fire sales representatives," the employee was considered a supervisor for purposes of Title VII); <u>Deffenbaugh-Williams v. Wal-Mart Stores, Inc.</u>, 156 F.3d 581, 592 (5th Cir. 1998) (where employee had the authority to discharge plaintiff, court held that the employee was a supervisor under <u>Faragher</u>); <u>Phillips v. Taco Bell Corp.</u>, 156 F.3d 884, 888 (8th Cir. 1998) (the store manager was a supervisor for Title VII liability purposes due to the degree of authority he exercised over plaintiff). After considering <u>Lissau</u>, <u>Deffenbaugh-Williams</u>, and <u>Phillips</u>, as well as the guidelines issued by the Equal Employment Opportunity Commission,[5] the district court in

---

[5] The guidelines issued by the Equal Employment Opportunity Commission ("EEOC") provide that:

Valenti v. Triangle Circuits of Pittsburgh, Inc., 419 F.Supp.2d 701, 706-07 (W.D. Pa. 2005), identified a "supervisor" by whether that particular employee had the ability to "hire and fire, and to set work schedules and pay rates." Id. at 707. In Valenti, the district court held that a "Group Leader," with the responsibilities of making sure that all jobs had been completed and that the employees within the department were working, was not a "supervisor" for the purposes of Title VII. 419 F.Supp.2d at 707.

This court concludes, following the rationale of the majority of the courts of appeals that have considered this issue, that the appropriate standard for determining who is a supervisor is the standard set forth in Parkins. Applying the factors described in Parkins and the other courts of appeals that followed Parkins' rationale to the instant case, this court concludes that there is no evidence of record upon which a reasonable juror could find that Carter had the kind of authority over plaintiff required to be considered a "supervisor" for the purposes of Title VII. It is undisputed that Carter did not have the authority to hire and fire, nor did he have the authority to set work schedules or pay rates. Much like the "Group Leader" in Valenti, Carter did not have the ability to promote, demote, or otherwise make tangible employment decisions affecting employees, including plaintiff.

Plaintiff further argues that because she was of the opinion and belief that Carter was her "boss" and that he had the ability and authority to terminate her employment and make tangible

---

> An individual qualifies as an employee's "supervisor" if:
>   a. the individual has authority to undertake or recommend tangible employment decisions affecting the employee; *or*
>   b. The individual has authority to direct the employee's daily work activities.

2 E.E.O.C. COMPLIANCE MANUAL § 615:0103 (2002) (emphasis in original).

employment decisions, there is a genuine issue of material fact. This contention, however, is without merit. A plaintiff cannot avert summary judgment with speculative or conclusory allegations, such as those found in the pleadings, but rather must present competent evidence from which a jury could reasonably find in her favor. Wilson v. U.S. Air Express, 1999 U.S. Dist. LEXIS 14250 (citing Anderson, 477 U.S. at 248; Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989); Woods v. Bentsen, 889 F. Supp. 179, 184 (E.D. Pa. 1995)). "[I]f the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed." Mlynczak v Bodman, 442 F.3d 1050 (7th Cir. 2006) (citing Mills v. First Fed. Sav. & Loan Ass'n of Belvidere, 83 F.3d 833, 841-42 (7th Cir.1996)) (quoting Visser v. Packer Eng'g Assocs., 924 F.2d 655, 659 (7th Cir.1991)). The courts' rulings regarding a plaintiff's beliefs apply in the case *sub judice* because, as explained previously, there was no evidence adduced by plaintiff, other than her beliefs, in support of Carter being plaintiff's boss.

Based upon the undisputed evidence of record and viewing the disputed evidence in the light most favorable to plaintiff, the court concludes that no reasonable trier of fact could find plaintiff adduced sufficient evidence with respect to the fifth element of this claim under a theory of vicarious liability. The court must next determine whether there is evidence of record sufficient to find plaintiff met the fifth element under a theory of traditional agency liability for co-workers.

*2. Co-worker – Agency Liability*

It is well established that when co-workers, rather than supervisors, are the perpetrators of sexual harassment, the employer may be subject to liability under a theory of respondeat superior liability. Jensen v. Potter, 435 F.3d 444 (3d Cir. 2006). This variation of respondeat superior liability exists where the defendant employer knew or should have known of the alleged harassment and failed to take prompt remedial action. Id. at 452-53.

If a plaintiff adduces evidence that the employer knew or should have known of the alleged harassment, the employer has an affirmative defense available. In Weston v. Pennsylvania, 251 F.3d 420 (3d Cir. 2001), the United States Court of Appeals for the Third Circuit held, in circumstances where there is no tangible employment action taken by the employer, that an employer will not incur liability for an employee's claim of sexual harassment where the employer (1) had an effective grievance procedure that was known to the alleged victim of sexual harassment; and (2) the employer timely stopped the harassment by investigating the issue and separating the alleged victim and perpetrator. Id. at 427 (citing Bouton v. BMW of North America, Inc., 29 F.3d 103, 110 (3d. Cir. 1994)). In Bouton, the court of appeals held that under negligence principles, prompt and effective action by the employer will relieve it of liability. Bouton, 29 F.3d at 107.

It is undisputed that McDonald's had a grievance policy and that the plaintiff was aware of this policy. It is also undisputed that McDonald's took action after plaintiff made her first written complaint and that McDonald's investigated and gave Carter a written warning.

McDonald's also instructed the store manager that the plaintiff's schedule should not overlap with Carter's schedule. Whether this prompt action was effective, is, however, in dispute.

This dispute arises because after the warning, while Carter was initially not scheduled to work the same shift as plaintiff, plaintiff's schedule eventually began to overlap with Carter's schedule. This fact, however, is only relevant if during that time, Carter returned to harassing plaintiff. See Maher v. Associated Services for the Blind, 929 F.Supp. 809 (E.D.Pa 1996). In Maher, plaintiff employee notified her employer that a co-worker was sexually harassing her. Id. at 814. The employer gave the harassing employee a warning and the alleged harassing ceased. Id. The court found that the employer's measures were effective and accordingly granted summary judgment, holding:

> The effectiveness of the remedial steps is not measured by the extent to which the employer disciplines or punishes the alleged harasser; *Bouton* makes it clear that corrective steps are effective if they stop the alleged sexual harassment. Measured by this standard, the steps taken by ASB were indisputably effective.

Id. In plaintiff's deposition, she testified that during the time period when her shifts overlapped with Carter's shifts, after her initial complaint, she was never harassed. Although she did file a complaint about Carter's behavior on January 22, 2004, plaintiff admitted that this conduct never rose to a level of harassment because she did not let it get that far.

Since plaintiff stated in her deposition that she was never harassed after McDonald's investigation, no reasonable trier of fact could find that the investigation and remedial measures were ineffective. Thus, based upon the undisputed evidence of record and viewing the evidence in dispute in the light most favorable to plaintiff, no reasonable juror could find that plaintiff can establish the fifth element for a hostile work environment claim.

For the foregoing reasons, summary judgment must be granted in favor of McDonald's on the hostile work environment claims under Title VII and the PHRA.

**II. Constructive Discharge**

In determining whether a plaintiff's termination of employment constitutes a constructive discharge, plaintiff must establish that "'(1) he or she suffered harassment or discrimination so intolerable that a reasonable person in the same position would have felt compelled to resign . . .; and (2) the employee's reaction to the workplace situation–that is, his or her decision to resign–was reasonable given the totality of the circumstances. . . .'" Pennsylvania Police Dept. v. Suders, 542 U.S. 129, 146-47 (2004) (quoting Suders v. Easton, 325 F.3d 432, 445 (3d Cir. 2003), which was reversed on other grounds in Suders).

Plaintiff, in her deposition, testified that the alleged harassment ceased towards the end of October 2003, once McDonald's took action. Plaintiff did not resign from her employment until January 27, 2004, more than three months after the alleged harassment ended. Thus, when plaintiff resigned, she was no longer incurring the intolerable conditions that would satisfy the first prong of a constructive discharge claim. It may be arguable that she was enduring the conditions necessary for constructive discharge before her complaint in October 2003; however, at that time, plaintiff complained and the harassment ceased. Once the harassment ceased plaintiff's decision to resign in January 2004, more than three months later, cannot be found by a trier of fact to be reasonable under those circumstances.

Moreover, a constructive discharge claim requires "a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." Landgraf v. USI

Film Products, 968 F.2d 427, 430 (5th Cir. 1992).  This court concluded that based upon the record plaintiff could not establish a prima facie case of hostile work environment.  Since there is a greater severity necessitated for a constructive discharge claim than for a hostile work environment claim, this court cannot hold that a reasonable jury could find plaintiff was constructively discharged.

McDonald's and the Court in Suders discussed the Ellerth/Faragher affirmative defense.[6]  Suders, 542 U.S. at 152.  It is not necessary to address that defense in this case because, as concluded above, plaintiff did not adduce sufficient evidence to support a prima facie case of constructive discharge.

## Conclusion

After reviewing the undisputed material facts of record and any disputed facts of record taken in the light most favorable to the nonmoving party, the court determines that McDonald's motion for summary judgment will be granted with respect the plaintiff's claims under Title VII and the PHRA.

---

[6]An employer may defend against [a constructive discharge claim,]
by showing both (1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of sexual harassment, and (2) that the plaintiff unreasonably failed to avail herself of that employer-provided preventive or remedial apparatus. This affirmative defense will not be available to the employer, however, if the plaintiff quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions.

Suders, 542 U.S. at 134.

## **ORDER**

AND NOW, this 20th day of March 2007, upon consideration of McDonald's motion for summary judgment (Doc. No. 31) and the submissions of the parties, IT IS ORDERED that the motion for summary judgment filed by McDonald's Corporation, defendant, is GRANTED in favor of McDonald's Corporation with respect to all remaining claims of Hopelynn Neely, plaintiff, for hostile work environment and constructive discharge under Title VII and the PHRA.

By the court,

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc: Counsel of Record